ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| LUIS ÁNGEL CRUZ APONTE<br><br>Apelante<br><br>v.<br><br>ASOCIACIÓN PUERTORRIQUEÑA DE CRIADORES DE CABALLO DE PASO FINO DE AMERICA, INC.<br><br>Apelada | **TA2025AP00341** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Caguas<br><br>Civil Núm. CG2024CV01811 cons. GR2024CV00172<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 23 de octubre de 2025.

Comparece ante este foro el Sr. Luis Cruz Aponte (señor Cruz o "el apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, notificada el 30 de julio de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria* presentada por la Asociación Puertorriqueña de Criadores de Caballo de Paso Fino de América Inc. (Asociación o "parte apelada"). Por consiguiente, ordenó al apelante a pagar la cantidad de $23,700.00 en concepto de cánones de arrendamiento y pagos tardíos. Además, le ordenó el desalojo del inmueble en controversia; le impuso $5,000.00 en concepto de honorarios de abogado; y ordenó el archivo de la demanda con perjuicio.

Por los fundamentos que expondremos a continuación, **MODIFICAMOS** la *Sentencia* apelada a los únicos fines de

eliminar la partida de honorarios de abogado concedida por el foro primario.

## I.

El 21 de mayo de 2024, el señor Cruz presentó una *Demanda* (CG2024CV01811) sobre incumplimiento de contrato en contra de la Asociación.[1] En esta, alegó que para diciembre de 2020, las partes firmaron un contrato de arrendamiento sobre una finca en el Municipio de Gurabo, con el propósito de que el apelante operara unas jaulas de caballos, un picadero de caballos para competencias, y un restaurante. Indicó que, el término del contrato era por 30 años, con un canon de arrendamiento de $2,300.00 mensuales, por los primeros 5 años. El señor Cruz reconoció que para el mes de enero de 2024, tenía un atraso en el pago de la renta. Sin embargo, sostuvo que el 23 de enero de 2024, la Junta de Directores aprobó una propuesta, en la cual el apelante se comprometió a pagar los días 1ero y 5to de cada mes, $2,300.00, con el propósito de pagar el canon de arrendamiento del mes y amortizar la deuda acumulada. No obstante, mencionó que en febrero de 2024, hubo cambio de Junta de Directores, quienes se negaron a cumplir el acuerdo de la pasada Junta y le exigieron que pagara la totalidad de la deuda ($21,200.00), más una penalidad por atrasos. A su vez, que debía desocupar el inmueble en o antes del 15 de junio de 2024. Así pues, instó la demanda y solicitó se ordenara a la Asociación a que cumpliera con el acuerdo de pago aprobado por la Junta anterior.

El 20 de junio de 2024, la Asociación presentó su *Contestación a Demanda*.[2] En esencia, negó que hubiese

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Contestación a Demanda*, entrada núm. 6 en SUMAC.

autorizado a enmendar las cláusulas del contrato de arrendamiento. A su vez, que la deuda acumulada era de $23,700.00.

El 25 de junio de 2024, el caso instado por el señor Cruz (CG2024CV01811) fue consolidado con el caso instado el 29 de mayo de 2024, por la Asociación (CG2024CV00172) sobre cobro de dinero y desahucio.

Luego de varias incidencias procesales, el 4 de abril de 2025, la Asociación presentó una *Moción en Solicitud de Sentencia Sumaria*.[3] Allí enumeró quince (15) hechos que, a su juicio, no estaban en controversia. Posteriormente, arguyó que no existía duda o controversia sobre el contenido del contrato y las obligaciones de las partes. A su vez, que el apelante incumplió con varias cláusulas del contrato de arrendamiento, dado que, no había evidencia alguna que sostuviera que el contrato de arrendamiento había sido enmendado. Así pues, solicitó se declarara *Ha Lugar* la moción y se ordenara al señor Cruz al pago completo de la deuda.

En respuesta, el 29 de abril de 2025, el señor Cruz presentó su *Oposición a Moción en Solicitud de Sentencia Sumaria y en Solicitud de que se Dicte Sentencia Sumaria a Favor de la Parte Demandante*.[4] En esta, sostuvo que no existían hechos materiales en controversia, sin embargo, que el derecho le asistía. Por ello, reiteró que el 23 de enero de 2024, en la reunión de Junta de Directores fue atendido el asunto sobre su plan de pago. Sin embargo, desconocía si la Asociación podía invalidar

---

[3] *Moción en Solicitud de Sentencia Sumaria*, entrada núm. 82 en SUMAC.
[4] *Oposición a Moción en Solicitud de Sentencia Sumaria y en Solicitud de que se Dicte Sentencia Sumaria a Favor de la Parte Demandante*, entrada núm. 89 en SUMAC.

acuerdos de Juntas de Directores anteriores. Por lo que, la parte apelada estaba prohibida de actuar en contradicción con sus propios actos o declaraciones.

Evaluadas las mociones, el 30 de julio de 2025, el foro primario notificó la *Sentencia* apelada.[5] Mediante la cual, formuló las siguientes determinaciones de hechos:

1. En diciembre de 2020 las partes suscribieron un contrato de arrendamiento sobre la de propiedad inmueble ubicada en el sector Los Chinos del Barrio Celada en Gurabo, Puerto Rico. (SIC) Durante dicho acto, la parte demandada estuvo representada su entonces presidente, Harry John Rodríguez del Valle.

2. El contrato de arrendamiento suscrito entre las partes establece que su duración será por el término de 30 años contados a partir del 1 de mayo de 2021, estableciendo un canon de arrendamiento mensual por la cuantía de $2,300.00 por los primeros 10 años.

3. El canon de arrendamiento será pagadero dentro de los primeros 5 días de cada mes calendario, en moneda de curso legal de los Estados Unidos.

4. La cláusula 14 del contrato de arrendamiento establece que:

Si los arrendatarios faltan en el cumplimiento de cualquier cláusula de este contrato, los arrendadores lo notificarán por escrito a los arrendatarios, quienes tendrán un término de veinte (20) días para remediar dicha falta o incumplimiento. De no remediarlo en el término dispuesto, los arrendadores podrán dar por cancelado y terminado este contrato. **Esta cláusula no aplica respecto a la falta de pago del canon de arrendamiento de la propiedad, el cual se hará dentro de los primeros cinco (5) días de cada mes calendario, sin necesidad de interpelación a los arrendatarios sobre dicha falta de pago.** (Énfasis en el original).

5. El hecho de que los arrendadores no hagan uso de alguno de sus derechos que, bajo este contrato, no significa que hayan renunciado a sus derechos y en cualquier momento hacer

---

[5] *Sentencia*, entrada núm. 100 en SUMAC.

uso y poner en efecto cualquiera de sus derechos y prerrogativas estipuladas en este contrato. Véase cláusula 15 del contrato de arrendamiento.

6. Si los arrendatarios (es decir, la parte demandante) dejaran de pagar a su vencimiento, en todo o en parte, el canon o renta mensual convenida o si incumplieran con cualesquiera de las cláusulas y condiciones estipuladas en este contrato, los arrendadores (es decir, la parte demandada) darán por cancelado, rescindido y terminado el mismo, y quedará en actitud de proceder judicialmente al desahucio así como al cobro de los cánones o rentas adeudadas y al cobro de los cánones del término remanente del contrato y el cobro de los daños y perjuicios que causa dicho incumplimiento. Véase cláusula 16 contrato de arrendamiento.

7. De efectuarse el pago con posteridad al día 5 de cada mes calendario, los arrendatarios (parte demandante) vendrán obligados a pagar una penalidad de $200.00. Véase cláusula 17 de contrato de arrendamiento.

8. Los términos y condiciones de este contrato no podrán ser variados ni alterados verbalmente. Todo cambio a los términos y condiciones del mismo tiene que hacerse por escrito, mediando la firma tanto de los arrendadores como de los arrendatarios, o sea, mediante la firma de las partes objeto de este pleito. Véase último párrafo del contrato de arrendamiento.

9. La parte demandante tiene una deuda en concepto de cánones de arrendamiento no pagados e intereses por mora, la cual está vencida, es líquida y exigible. Nótese, que estos hechos son reconocidos por la parte demandante en varios de sus escritos.

10. Las partes en ningún momento redactaron y firmaron una enmienda al contrato de arrendamiento suscrito el diciembre de 2020.

11. En la reunión de la Junta de Directores del 23 de enero de 2024 no se realizó enmienda escrita al contrato de arrendamiento otorgado entre las partes.

12. Luis Ángel Cruz Aponte ha consignado 13 cheques en concepto de pago de rentas, uno por la cantidad de $9,200.00 y otros 12 por la cuantía $2,300.00, para un total de $37,200.00.

13. Actualmente, la deuda vencida, líquida y exigible por concepto de falta de pagos de cánones de arrendamientos y penalidades por atrasados asciende a $23,700.00 al 1 de julio de 2025.

Así pues, conforme a los hechos antes expuestos y el derecho aplicable determinó que no surgía que las partes hubieran hecho una novación de contrato o llegado a un acuerdo por escrito diferente al contrato de arrendamiento suscrito en el 2020. Señaló que, el contrato era claro y específico al disponer que cualquier enmienda debía efectuarse por escrito. Por lo que, el alegado acuerdo de un plan de moratoria discutido en la reunión del 23 de enero de 2024, no enmendó o dejó sin efecto el contrato de arrendamiento. Por consiguiente, concluyó que el señor Cruz incumplió con el contrato al acumular una deuda en concepto de cánones de arrendamientos, por lo cual, declaró *Ha Lugar* la solicitud de sentencia sumaria instada por la Asociación. A su vez, ordenó al apelante a pagar la suma de $23,700.00; a desalojar el inmueble en controversia en un plazo de 20 días; imposición de $5,000.00 en concepto de honorarios; y ordenó el archivo de la demanda del señor Cruz, con perjuicio. Finalmente, le impuso una fianza en apelación de $10,000.00.

En desacuerdo, el 14 de agosto de 2025, el apelante presentó una *Moción de Reconsideración*.[6] Sin embargo, el 15 de agosto de 2025, el foro primario notificó una *Orden*, en la cual la declaró *No Ha Lugar*.[7]

Posteriormente, el 5 de septiembre de 2025, el señor Cruz presentó una *Urgente Solicitud para que: (A) Se Considere Por No Puesta "Moción De Lanzamiento"*,

---

[6] *Moción de Reconsideración*, entrada núm. 101 en SUMAC.
[7] *Orden*, entrada núm. 102 en SUMAC.

*(B)Se Deje Sin Efecto "Orden De Lanzamiento" y/o (C) Se Reconsidere "Orden De Lanzamiento"*.[8] En esencia, sostuvo que la *Demanda* instada por la Asociación, a pesar de haberse presentado por las disposiciones del proceso sumario de desahucio en precario, al consolidarse con el pleito instado por el apelante se convirtió el pleito a la vía ordinaria. Por ello, al foro primario emitir una orden de lanzamiento al amparo del Artículo 632 del Código de Enjuiciamiento Civil, menoscabó su debido proceso de ley. Así pues, solicitó se dejara sin efecto la orden de lanzamiento. Finalmente, señaló que consignó en la secretaría del foro primario los fondos reclamados, y que estaban a la disposición de la Asociación.[9]

El 8 de septiembre de 2025, el foro primario mediante *Orden*, declaró *Ha Lugar* la moción del apelante, la cual dejó sin efecto la orden de lanzamiento.[10]

Inconforme con la determinación apelada, el 15 de septiembre de 2025, el señor Cruz presentó el recurso que nos ocupa y formuló el siguiente señalamiento de error:

> El Tribunal de Primera Instancia erró al dictar Sentencia Sumaria en contra del apelante e imponerle honorarios de abogado, ya que la doctrina de actos propios aplicaba en contra de la apelada y, en todo caso,

---

[8] *Urgente Solicitud para que: (A)Se Considere Por No Puesta "Moción De Lanzamiento", (B)Se Deje Sin Efecto "Orden De Lanzamiento" y/o (C) Se Reconsidere "Orden De Lanzamiento"*, entrada núm. 110 en SUMAC.

[9] Según surge de la *Certificación* emitida por el Auxiliar Contabilidad II del Tribunal de Primera Instancia, hay un balance en el caso de epígrafe de $39,100.00, los cuales están depositados en la cuenta de Secretaría Civil del foro *a quo*. Véase, entrada núm. 106 en el expediente digital SUMAC. El Artículo 630 del Código de Enjuiciamiento Civil, 32 LPRA secc. 2838, dispone: "[n]o se admitirá al demandado el recurso de apelación si no otorga fianza, por el monto que sea fijado por el tribunal, para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación; pudiendo el demandado, **cuando el desahucio se funde en falta de pago de las cantidades convenidas, a su elección, otorgar dicha fianza o consignar en Secretaría el importe del precio de la deuda hasta la fecha de la sentencia.**"

[10] *Orden*, entrada núm. 112 en SUMAC.

existía una controversia genuina acerca de la aplicación de dicha doctrina.

El 16 de septiembre de 2025, emitimos una *Resolución* en la cual le concedimos a la parte apelada el término dispuesto en el Reglamento de este Tribunal, para que presentara su alegato en oposición.

El 16 de octubre de 2025, la Asociación presentó su *Oposicion de Apelación de Sentencia emitida el 30 de julio de 2025*.

Con la comparecencia de ambas partes, procedemos a resolver el caso de epígrafe.

**II.**

**-A-**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR __ (2024); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018).

Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Oriental Bank v. Caballero García,* supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así la economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 979-980; *Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y

esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA*, supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4). Véase, además: *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677; *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, supra. Véase, además: *SLG Zapata-Rivera v. JF Montalvo*, supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia bona fide de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo*, supra, págs. 333-334; *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA*, supra, pág. 941; *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo*, supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este

foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, supra, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.
>
> Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**–B–**

La libertad de contratación es un principio básico del derecho contractual en Puerto Rico. *Arthur Young & Co. v. Vega III*, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o a las buenas costumbres. 31 LPRA sec. 6242. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, *Fundamentos de Derecho Civil: Doctrina General del Contrato*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. Arts. 1233 y 1062 del Código Civil, 31 LPRA secs. 9754 y 8983. Véase, además: *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024). Es por ello que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto determinable y (3) causa lícita. 31 LPRA 6131 y 31 LPRA sec. 6142. Véase, además: Cruz*, López v. Casa Bella y otros*, supra, pág. 995. Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se

puede utilizar aquella que se considere conveniente." 31 LPRA sec. 6161.

Particularmente, el contrato de arrendamiento consiste en que "una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto." Artículo 1331 del Código Civil, 31 LPRA sec. 10101. Véase, además: *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 797 (2023). Al pactar el contrato, el dueño, o arrendador, se desprende voluntariamente de parte de su derecho de propiedad consistente en el goce o uso material de la cosa, por determinado tiempo y a cambio de un precio. *Garage Coop. de Sabana Grande v. Arco Caribbean, Inc.*, 111 DPR 52, 54 (1981).

-C-

De otra parte, el desahucio es el medio que tiene el dueño de un inmueble para recobrar judicialmente su posesión. Se trata de un procedimiento reglamentado por los Artículos 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2827; 2829-2832 y 2835-2838; que responde al interés del Estado en atender expeditamente la reclamación del dueño de un inmueble, la cual se le ha impedido ejercer su derecho a poseer y disfrutar del mismo. *Cooperativa de Vivienda Rolling Hills v. Colón Lebrón*, 203 DPR 812 (2020).

Según el Artículo 621 del Código de Enjuiciamiento Civil, el desahucio procede contra "los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna". 32 LPRA sec. 2822. De otra parte, el Artículo 620 del precitado Código,

dispone que los legitimados para instar una acción de desahucio son "los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes." 32 LPRA sec. 2821.

El Tribunal Supremo de Puerto Rico ha reiterado jurisprudencialmente que el desahucio es "uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble." 32 LPRA sec. 2821. Véase, además: *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234-235 (1992). El objetivo principal del desahucio es recuperar la posesión material de un bien inmueble mediante el lanzamiento o la expulsión del arrendatario o precarista que lo detente sin pagar canon o merced alguna. *Escudero v. Mulero*, 63 DPR 574, 588-589 (1944). El demandado podrá solicitar que el procedimiento se convierta en ordinario, en caso de que presente otras defensas afirmativas, en consideraciones de otras acciones relacionadas con la acción de desahucio. *ATPR v. SLG Volmar Mathieu*, 196 DPR 5, 9-12 (2016). En virtud de lo anterior, los foros judiciales gozan de discreción para convertir el procedimiento de desahucio en uno ordinario, prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones. *Turabo Ltd. Partnership vs. Velardo Ortiz*, 130 DPR 226, 241 (1992).

Los procesos de desahucio se centran únicamente en recobrar la posesión del inmueble, mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Turabo Ltd. Partnership vs. Velardo Ortiz*, supra, págs. 234-235; Mora Dev. Corp. vs. Sandín, 118 DPR 733 (1987). Por ello, en la acción sumaria se

debe limitar la concurrencia o consolidación de otras acciones o defensas. Cuando el demandado presenta otras defensas afirmativas, dicha parte puede solicitar que el procedimiento se convierta en uno ordinario. *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 10 (2016). En tales casos, la reclamación estará sujeta a las reglas de la litigación civil ordinaria, excluyendo la reglamentación de desahucio y sus restringidas condiciones. *Íd.*

-D-

Nuestro ordenamiento jurídico contempla la imposición de honorarios por razón de temeridad o frivolidad en la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d) "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."

El amplio concepto de temeridad conlleva aquellas actuaciones de un litigante que conduzcan a un pleito que pudo evitarse, que provoque la prolongación indebida del trámite judicial, o que obligue a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148 (2022); *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010). Un litigante perdidoso actúa con temeridad cuando con terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *COPR v. SPU*, 181 DPR 299, 342 (2011); *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008).

No obstante, la imposición de honorarios por temeridad no opera de modo automática. Su concesión depende exclusivamente de la determinación que haga el juzgador en torno a si la parte perdidosa o su abogado actuó o no con temeridad. *PR Fast Ferries et al. v. AAPP,* 213 DPR 103, 115 (2023); *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 736 (1990). A tales efectos, le corresponde al tribunal evaluar las siguientes consideraciones: (1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados. *COPR v. SPU,* supra, pág. 342-343, (citando a R. Hernández Colón, *Derecho Procesal Civil,* San Juan, Ed. LexisNexis, 2010, Sec. 4402).

Así pues, una parte es temeraria cuando insiste en alegar algo sin alguna prueba fehaciente, niega los hechos que le constan o son de fácil corroboración y dilata los procedimientos judiciales para no responder por sus obligaciones. *Consejo Titulares v. MAPFRE*, 2024 TSPR 140, 215 DPR __ (2025); *SLG González-Figueroa v. SLG et al.*, supra, págs. 149-150. A modo ilustrativo, el foro supremo local ha delimitado las siguientes circunstancias como escenarios de temeridad o frivolidad:

> (1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. *COPR v. SPU,* supra, pág. 342.

Sin embargo, la concesión de honorarios por temeridad no procede cuando un litigante perdidoso ejerce su derecho a defenderse. En esa línea, el Tribunal Supremo de Puerto Rico ha establecido aquellos escenarios que no ameritan la imposición de estos honorarios:

> [E]n innumerables ocasiones hemos expresado que no procede la imposición del pago de honorarios de abogado cuando lo que se enuncia ante el tribunal son controversias complejas y novedosas que no han sido resueltas; cuando se actúa acorde con una apreciación errónea del derecho y no hay precedentes establecidos sobre el asunto, o cuando existe alguna discrepancia genuina en cuanto a quién favorece el derecho aplicable. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 277 (2021); *Santiago v. Sup. Grande*, 166 DPR 796, 821 (2006).

Por último, el foro primario goza de la facultad para imponer los honorarios de abogado a la parte que haya procedido con temeridad o frivolidad a tenor con la Regla 44.1 de Procedimiento Civil, *supra*. *Andamios de PR v. Newport Bonding,* supra, pág. 546. Efectuado el análisis discutido, el tribunal impondrá el pago de una suma por este concepto cuando determine que cualquier parte o su abogado actuó temerariamente.

Esta determinación es un asunto que descansa en la discreción del tribunal. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *PR Oil v. Dayco,* 164 DPR 486, 511 (2005). Por ser la determinación de temeridad de carácter discrecional, solo intervendremos con ella cuando nos enfrentemos a un craso de abuso de discreción. *Andamios de PR v. Newport Bonding,* supra, pág. 546; *SLG Flores-Jiménez v. Colberg*, supra, pág. 866. Al respecto, conviene precisar que, la

jurisprudencia ha establecido aquellas instancias constitutivas de abuso de discreción:

> Un tribunal puede incurrir en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Así pues, "el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad." *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 210 (2023). La discreción debe nutrirse de un juicio apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. *Citibank et al. v. ACBI et al.,* supra, pág. 735; *SLG Zapata-Rivera v. JF Montalvo,* 189 DPR 414, 435 (2013).

## III.

En el caso de autos, el señor Cruz alega que incidió el foro primario al dictar sentencia sumariamente e imponerle honorarios de abogados, aun cuando la doctrina de actos propios aplicaba en contra de la parte apelada. Sostiene que, la aceptación por parte de la Junta anterior sobre su propuesta del plan de pago provocó que estos renunciaran a ejercer las cláusulas penales del contrato de arrendamiento. Por ello, se debió aplicar la doctrina de actos propios, dado que, la Asociación al repudiar su propia decisión, va en contra de la norma sobre que nadie puede ir contra sus propios actos.

Antes de atender el señalamiento de error previamente expuesto, cabe precisar que, al momento de revisar la concesión de una sentencia sumaria, nos

encontramos en la misma posición que el foro de instancia. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con lo establecido por nuestro Tribunal Supremo en *SLG Zapata-Rivera v. JF Montalvo,* supra.

Al evaluar los escritos presentados por las partes juzgamos que, en esencia, la parte apelada cumplió con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra*, ya que en esta incluyó una relación concisa y enumerada de todos los hechos esenciales y pertinentes sobre los que alega no existe controversia sustancial y estableció una relación con aquella evidencia que sometió en apoyo de estos. Sin embargo, no podemos llegar a la misma conclusión en cuanto a la oposición presentada por el señor Cruz. En esencia, no cumplió con los requisitos de forma requeridos por la misma regla. Sin embargo, dicho incumplimiento no implica la concesión automática de la sentencia sumaria solicitada, ya que, según señalamos en el acápite del derecho aplicable de la sentencia sumaria, este remedio podrá dictarse a favor o en contra del promovente, según proceda en derecho.

Atendido lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria.

En su dictamen, el foro primario formuló trece (13) determinaciones de hechos, las cuales procederemos a resumir y adoptar en su totalidad. En diciembre de 2020, el señor Cruz y la Asociación suscribieron un contrato

de arrendamiento por el término de 30 años, con un canon de arrendamiento mensual de $2,300.00, siendo pagaderos dentro de los primeros 5 días de cada mes calendario. Asimismo, incluyeron que, de realizarse el pago luego del día 5 de cada mes calendario, incurriría en una penalidad de $200.00. El apelante reconoció que acumuló una deuda en concepto de cánones de arrendamiento no pagados e intereses por mora. Por lo que, la deuda está vencida, es líquida y exigible, ascendiendo a $23,700.00 al 1 de julio de 2025.

Conforme a la normativa antes expuesta, la Regla 36.5 de Procedimiento Civil, *supra*, dispone lo siguiente:

Conforme lo establece el inciso (e) de la Regla 36.3, supra, establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.
>
> El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3(e).

Es decir, cuando no existe controversia sobre los hechos materiales que provocaron el caso, solo resta que el foro de instancia aplique el derecho a los hechos incontrovertidos. *Pérez Vargas v. Office Depot /Office*

*Max, Inc.,* 203 DPR 687, 699 (2019); citando a: *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014). Así pues, aún si diéramos por buena, la oposición a la sentencia sumaria interpuesta por el señor Cruz, sus argumentos no nos persuaden. El apelante insiste en que el foro primario no debió determinar que la cláusula sobre enmiendas por escrito invalidaba cualquier acuerdo posterior que no cumpliera con dicha formalidad. Sin embargo, las determinaciones de hechos emitidas por el foro *a quo* están adecuadamente sustentadas en la prueba presentada junto a la moción de sentencia sumaria.

El contrato de arrendamiento establecía que sus términos y condiciones no podían ser variados ni alterados verbalmente. Al contrario, cualquier cambio tenía que ser por escrito, mediando la firma de las partes de epígrafe. Es por ello que, aun en la reunión del 23 de enero de 2024, cuando la Junta aceptó un acuerdo sobre el contrato de arrendamiento, dicha enmienda no se concretó y realizó por escrito firmado por las partes. Asimismo, el propio apelante reconoció que tenía una deuda, por lo que, la Asociación podía cancelar y dar por terminado el contrato.

Nuestro ordenamiento jurídico establece que cuando las partes otorgan un contrato, y este es claro, se tiene que interpretar en el sentido literal de la palabra. Por lo que, no existe espacio para interpretación jurídica distinto. Así pues, tras haber revisado la totalidad del expediente, evaluar los argumentos de las partes y aquilatar la prueba presentada, concluimos que no existen hechos sustanciales en controversia que impedían que el foro primario dictara una sentencia por la vía sumaria.

De otra parte, el señor Cruz sostiene que el foro de instancia abusó de su discreción al imponerle honorarios de abogados por temeridad, debido a que presentó la demanda, por la conducta contradictoria de la parte apelada. Sostiene que, tuvo que presentar la causa de acción contra la Asociación, para hacer valer una resolución de la propia parte apelada.

Conforme a la normativa antes expuesta, la imposición de honorarios de abogado persigue penalizar a una parte que ha procedido en el caso con temeridad. Dicha penalidad busca castigar la terquedad de una parte que desprovista de fundamentos, ocasiona molestias, gastos e inconveniencias a la parte victoriosa.

El foro primario incidió al ordenarle el pago de honorarios al señor Cruz. El apelante, aunque erróneamente, estuvo vindicando un derecho que entendía le correspondía, al querer hacer cumplir el acuerdo verbal llegado en la reunión del 23 de enero de 2024. De otra parte, éste se mantuvo consignando el dinero de los cánones de arrendamiento en el Tribunal. Por ello, concluimos que no surge que el señor Cruz haya actuado con temeridad al presentar su demanda.

En virtud de lo antes expuesto, nos vemos compelidos a modificar la *Sentencia* del Tribunal de Primera Instancia, para eliminar la cuantía impuesta por honorarios de abogados ($5,000.00), y así modificada se confirma la *Sentencia* la cual declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por la Asociación.

**IV.**

Por los fundamentos antes expuestos, **MODIFICAMOS** la *Sentencia* apelada a los fines de eliminar la imposición

de honorarios de abogados; y así modificada, **CONFIRMAMOS** la *Sentencia* emitida el 30 de julio de 2025 por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones